# **EXHIBIT D**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| MICROSOFT CORPORATION, | : | 13 Civ. 8275 (PAC) |
| Plaintiff, | : | |
| v. | : | |
| ACACIA RESEARCH CORPORATION, | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

## ACACIA RESEARCH CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

## TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 1 |
| | A. | Microsoft Has Not Pled A Breach Of Contract Claim. | 1 |
| | | 1. The Contract Permits Acacia To Sue For Damages Incurred After September 30, 2013. | 1 |
| | | 2. The Contract's Update Provision Did Not Require Acacia To State Whether Microsoft Infringed A Patent. | 2 |
| | | 3. The Indemnity Provision Does Not Contain A Duty To Defend | 4 |
| | | 4. Microsoft Has Not Pled A Claim That Acacia Improperly "Us[ed] Disclosures" Made By Microsoft. | 4 |
| | B. | The Mere Filing Of Lawsuits, Even Seven Of Them, Does Not Constitute An Abuse Of Process. | 5 |
| | C. | Microsoft's Claim For Declaratory Relief Fails. | 7 |
| | D. | Microsoft Fails to Adequately Allege Alter Ego Or Agency. | 7 |
| | E. | Microsoft's Claims Are Compulsory Counterclaims. | 9 |
| III. | CONCLUSION | | 10 |

## TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.,
    626 F.3d 699 (2d Cir. 2010)................................................................6

AGCS Marine Ins. Co. v. Associated Gas & Oil Co.,
    775 F. Supp. 2d 640 (S.D.N.Y. 2011)..................................................9

Atuahene v. City of Hartford,
    10 Fed. Appx. 33 (2d Cir. 2001)..........................................................4

Barquis v. Merch. Collection Ass'n of Oakland, Inc.,
    496 P.2d 817 (Cal. 1972)......................................................................6

Bluegrass Hosiery, Inc. v. Speizman Indus., Inc.,
    214 F.3d 770 (6th Cir. 2000) ..............................................................10

Dickey's Barbecue Rests., Inc. v. Mathieu,
    No. 12-cv-5119, 2013 U.S. Dist. LEXIS 133204 (N.D. Tex. Sept. 18, 2013) .........................2

Edwards Co. v. Monogram Industries, Inc.,
    700 F.2d 994 (5th Cir. 1984) ...............................................................8

Int'l Controls & Measurements Corp. v. Honeywell Int'l, Inc.,
    No. 12-cv-1766, 2013 U.S. Dist. LEXIS 127960 (N.D.N.Y Sept. 9, 2013)............................9

Ippolito v. Meisel,
    958 F. Supp. 155 (E.D.N.Y. 1997) .....................................................7

Iwachiw v. BOCES Nassau,
    318 Fed. Appx. 8 (2d Cir. 2009)..........................................................4

Jomico, LLC v. Traxys N. Am., LLC,
    No. CIV-09-342, 2010 U.S. Dist. LEXIS 64668 (E.D. Okla. June 29, 2010).........................9

JSJ Limited Partnership v. Mehrban,
    205 Cal. App. 4th 1512 (2012) ............................................................6

Kiobel v. Royal Dutch Petroleum Co.,
    621 F.3d 111 (2d Cir. 2010)..................................................................8

Kittay v. Kornstein,
    230 F.3d 531 (2d Cir. 2000)..................................................................4

Loomis v. Murphy,
    217 Cal. App. 3d 589 (1990) ................................................................6

Mopex, Inc. v. AMEX, LLC,
    No. 02-civ-1656, 2002 U.S. Dist. LEXIS 3532 (S.D.N.Y. Mar. 5, 2002)...............................10

National Union Fire Ins. Co. v. Jett,
    118 F.R.D. 336 (S.D.N.Y. 1988) ............................................................................................10

Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.,
    No. 03-3134, 2006 U.S. App. LEXIS 20545 (10th Cir. Apr. 11, 2006)...............................2, 4

Porat v. Lincoln Towers Community Assoc.,
    464 F.3d 274 (2d Cir. 2006).....................................................................................................10

Seidner v. 1551 Greenfield Owners Ass'n,
    108 Cal. App. 3d 895 (1980) .....................................................................................................6

Sommer v. Dixon,
    709 F.2d 173 (2d Cir. 1983).......................................................................................................4

Stroock & Stroock & Lavan v. Beltramini,
    157 A.D.2d 590 (N.Y. App. Div. 1st Dep't 1990) .....................................................................6

Tequila Cuervo La Rohena, S.A. de C.V. v. Jim Beam Brands Co.,
    No. 10-civ-0203, 2011 U.S. Dist. LEXIS 12290 (S.D.N.Y. Feb. 8, 2011) ...............................7

Touch Concepts v. Cellco P'Ship,
    949 F. Supp. 2d 447 (S.D.N.Y. 2013)........................................................................................4

Tryco Enters. V. Robinson,
    390 S.W.3d 497 (Tex. App. 2012).............................................................................................8

Yu v. Signet Bank/Virginia,
    69 Cal. App. 4th 1377 (1999) ....................................................................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 13(a) ..........................................................................................................................9

Fed. R. Civ. P. 8 ................................................................................................................................4

Fed. R. Civ. P. 12(b)(3)......................................................................................................................9

Fed. R. Civ. P. 12(b)(6)......................................................................................................................9

This memorandum of law is respectfully submitted in support of Acacia Research Corporation's ("Acacia") Motion to Dismiss Microsoft Corporation's ("Microsoft") Complaint and in reply to Microsoft's opposition brief ("Opposition").

## I.      INTRODUCTION

Microsoft's Opposition fails to quote any language from the Contract in support of its argument.  This is because no such language exists.  There is no language requiring Acacia to update Microsoft as to whether Microsoft is infringing Acacia's patents.  There also is no language that prohibits the Subsidiaries from enforcing their patent rights based upon discussions between Microsoft and Acacia.  Microsoft's contract claim therefore fails.

Microsoft's other claims also fail.  First, Microsoft only alleges that Acacia intended for Microsoft to incur legal fees defending the Subsidiary Actions, which does not constitute a collateral purpose that can support an abuse of process claim.  Second, Microsoft's argument that it should be permitted to file this action in New York, when each of its claims are compulsory counterclaims in the Subsidiary Actions, ignores binding precedent.  Finally, Microsoft's declaratory relief claim is premature.

Acacia respectfully requests that Microsoft's Complaint be dismissed with prejudice because no amendment can change the language in the Contract.  Indeed, Microsoft has not suggested any additional allegations it could plead that would cure the defects in the Complaint, although it is Microsoft's burden to do so.

## II.      ARGUMENT

### A.      Microsoft Has Not Pled A Breach Of Contract Claim.

#### 1.      The Contract Permits Acacia To Sue For Damages Incurred After September 30, 2013.

Microsoft now acknowledges that the Subsidiary Actions may seek damages for infringement occurring after September 30, 2013.  (Opp. at 7.)  Microsoft instead wrongly asserts

that these lawsuits seek damages prior to that date.

Microsoft points only to unspecific allegations in a couple of the Subsidiary Action Complaints stating that Microsoft "has" infringed. (Id.) Microsoft fails to address that none of the Subsidiary Actions pray "for damages for infringement that pre-dates September 30, 2013." (Mot. at 10.) The Subsidiaries have cured any ambiguity by amendment or judicial admission. (Mot. at 10-11 (citing cases holding that stipulation moots case).)

Oddly, Microsoft refuses to accept those stipulations and admissions although they afford Microsoft the very relief it claims to be seeking here—preclusion of the Subsidiaries from seeking damages for infringement pre-September 30, 2013. Microsoft's true goal is to prolong this case to justify its attempted forum-shopping aimed at litigating the Subsidiary Actions here.

Microsoft's cited cases are inapposite. For example, in Pepsi-Cola,[1] Pepsico terminated the plaintiff's exclusive bottling agreement. Twenty-one months later, Pepsico offered to reinstate the agreement. Pepsico's offer did not remedy the damages the plaintiff had suffered during the time period when it did not have an agreement.[2] Unlike Pepsi-Cola, Microsoft did not suffer any damages during the period when it purportedly "misunderstood" whether the Subsidiaries sought damages incurred prior to September 30, 2013. Microsoft had to respond in the Subsidiary Actions whether or not the complaints sought damages from prior to September 30, 2013. Microsoft argues that even *de minimis* damages are enough, but Microsoft has suffered no harm at all. Indeed, courts have held that breaches of covenants not to sue do not give rise to damage claims. (Mot. at 13-14 (citing cases).)[3]

## 2. The Contract's Update Provision Did Not Require Acacia To State Whether Microsoft Infringed A Patent.

Microsoft's Opposition fails to quote the annual update provision. All that provision

---

[1] Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc., No. 03-3134, 2006 U.S. App. LEXIS 20545, *30 (10th Cir. Apr. 11, 2006).

[2] Similarly, in Dickey's Barbecue Rests., Inc. v. Mathieu, No. 12-cv-5119, 2013 U.S. Dist. LEXIS 133204, *23-24 (N.D. Tex. Sept. 18, 2013), cited by Microsoft, the plaintiff also incurred damages in the form of lost profits.

[3] Microsoft distinguishes the covenant not to sue cases on the basis that the Contract has an indemnity provision, but Microsoft's indemnity rights are not ripe. (See Section II.C., infra.)

requires is Acacia send Microsoft "a list of any additional patents beyond those identified in Schedule A that meet the definition of Acacia Patents." (Contract, Art. A6, § A6.7.) The provision does not require Acacia to state its "belief" as to whether Microsoft is infringing.

Although Microsoft refers to the definitions of "Licensed Patents" and "Covenanted Patents" from Articles A1.2 and A1.3, the update provision in Article A6.7 does not reference A1.2 or A1.3 (or the terms Licensed Patents or Covenanted Patents). Instead, the update provision only requires Acacia to list any new patents it has acquired; it does not require Acacia to categorize the patents in this way. (Contract, Art. A6.7.) Microsoft argues that Article A1.3 requires Acacia to amend the list of Covenanted Patents, but the actual language states that Acacia "may" amend this list (which means Acacia is not required to do so).[4]

Microsoft argues that Acacia somehow admitted that Microsoft did not infringe any Covenanted Patent and therefore could never sue Microsoft on a Covenanted Patent. Microsoft again points to no language in the Contract. In fact, Acacia had the right to re-designate a "Covenanted Patent" as a "Licensed Patent" at any time in its "sole discretion." (Contract, Art. 2, § A2.2(a).) Indeed, the covenant not to sue provided in Article A2.2 for Later Acquired Patents that were Covenanted Patents expressly expired as of September 30, 2013, meaning that Acacia could sue Microsoft on these Covenanted Patents after that date. Microsoft's position that the designation of a patent as a "Covenanted Patent" forever immunized Microsoft from suit is contradicted by the plain language of the Contract. (Mot. at 9 (citing cases granting motion to dismiss when plain contract language defeated claim).)

Microsoft argues that the implied covenant of good faith and fair dealing required Acacia to state its belief. However, such an obligation would conflict with the Contract language stating

---

[4] Microsoft also cites Article 1.3, but this article only provides the definition of "Existing Patents" and again has nothing to do with any update requirements or the categorization of patents as "Covenanted" or "Licensed."

that Acacia "may" do so "at its sole discretion." The implied covenant cannot impose obligations inconsistent with the Contract language. Indeed, the cases cited by Microsoft hold as much. See, e.g., Pepsico, 2006 U.S. App. LEXIS 20545 at *43-44; see also In Touch Concepts v. Cellco P'Ship, 949 F. Supp. 2d 447, 469 (S.D.N.Y. 2013).

### 3. The Indemnity Provision Does Not Contain A Duty To Defend.

Acacia's Motion explained that the indemnity clause does not contain a "duty to defend." Under well-established law, Acacia's indemnity obligations therefore only are triggered by a judicial finding, and not by mere allegations, of liability. (Mot. at 12-13 (citing cases).)

Instead of citing any contrary legal authority, Microsoft just repeats its allegation that, because the Subsidiary Actions purportedly seek past damages in breach of the Contract, Microsoft is entitled to indemnity. Microsoft's logic would mean that, even if the Subsidiaries are successful in the Subsidiary Actions, Acacia would still owe indemnity to Microsoft. The Contract does not give Microsoft such a right. (Contract, Art. A6, § A6.1.) Without a duty to defend, Microsoft's indemnity claim simply is not ripe. (Mot. at 12-13.)

### 4. Microsoft Has Not Pled A Claim That Acacia Improperly "Us[ed] Disclosures" Made By Microsoft.

Under Rule 8, "a plaintiff must disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (internal citations omitted). A motion to dismiss therefore should be granted where a cause of action is supported only by vague allegations. See, e.g., Iwachiw v. BOCES Nassau, 318 Fed. Appx. 8 (2d Cir. 2009); Atuahene v. City of Hartford, 10 Fed. Appx. 33 (2d Cir. 2001); Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983).

Microsoft complains that the Motion does not address paragraph 37 of the Complaint.

4

However, Paragraph 37 makes no reference to any provision in the Contract, and does not plead facts to show how Acacia has breached any obligation.[5]  Paragraph 37 fails to state a claim.

Microsoft's attempt to expound upon what it meant by paragraph 37 in its Opposition does not change this result.  (Opp. at 12.)  Microsoft apparently argues that because Acacia had unspecified discussions with Microsoft about certain patents, Acacia is barred from enforcing its rights under those patents.  Microsoft does not cite any provision in the Contract.  (Id.)  The only provision in the Contract that comes remotely close is Article 3.1, in which Acacia agreed that it "will not use the existence or terms of this Option Agreement. . . , Addendum A or the disclosure of Schedule A or Schedule C.1 … in any way to prejudice" Microsoft.  This provision makes no mention of "discussions between Microsoft and ARC relating to the Contract."  (Opp. at 12.)  Microsoft does not allege that the Subsidiaries have asserted that the "existence or terms" of the Contract support their lawsuits, so the Subsidiaries have not breached this provision.

### B. The Mere Filing Of Lawsuits, Even Seven Of Them, Does Not Constitute An Abuse Of Process.

Microsoft mainly argues that the Subsidiaries "maximized the burden and expense" on Microsoft by filing seven separate lawsuits.  (Opp. at 16.)  Of course, Microsoft allegedly is violating seven separate patent portfolios, each of which involves different defendants in addition to Microsoft.  (Mot. at 15.)  In any event, the Motion explained that the expense arising from the defense of a lawsuit does not constitute a "collateral purpose" that can support an abuse

---

[5] Microsoft's reference in its Opposition to a brief filed in the *Video Streaming Solutions* case is an improper attempt to buttress the face of its Complaint with material outside of the pleadings.  In any event, contrary to Microsoft's argument, the brief (and the pleadings it refers to) does not "confirm" that any inducement allegations were based on discussions or disclosures relating to the Contract.  In fact, the brief notes that the complaint in that case "leaves open the possibility that Microsoft independently had knowledge of one or more of the patents-in-suit."  (Mazur Decl., Ex. B at 7 n.7.)

of process claim. (Mot. at 14-16 (citing cases).)[6] Microsoft does not a single case where the burden of defending a suit constituted a collateral purpose.

Microsoft also argues that the Subsidiary Actions are "baseless." However, the purported lack of merit of a suit also does not constitute a "collateral purpose" that can support an abuse of process claim. Moreover, it is for the Court before which those cases are pending to determine whether those claims have merit, not this Court. (Mot. at 14 -16 (citing cases).)[7]

Microsoft cites two California cases for the proposition that the mere filing of a lawsuit is enough to state an abuse of process claim. Barquis v. Merch. Collection Ass'n of Oakland, Inc., 496 P.2d 817, 824 n.4 (Cal. 1972); Yu v. Signet Bank/Virginia, 69 Cal. App. 4th 1377, 1390 (1999). However, California law does not apply here. Moreover, later California decisions have explained that Barquis and Yu do not even stand for this proposition. Seidner v. 1551 Greenfield Owners Ass'n, 108 Cal. App. 3d 895, 904 (1980) ("appellant cites us to [Barquis] wherein he wants us to believe that the filing of a lawsuit is abuse of process" but "the cases . . . do not indicate that the mere filing of the lawsuit is abuse of process"); Loornis v. Murphy, 217 Cal. App. 3d 589, 595 (1990) ("There must be some substantial use or misuse of the judicial process beyond the mere filing of the prior action.").[8] Finally, Barquis and Yu both involve consumer debt collection actions with no legitimate purpose. Here, the Subsidiaries have the right as patentees to enforce their patents. (Mot. at 16-18.)

---

[6] See, e.g., Stroock & Stroock & Lavan v. Beltramini, 157 A.D.2d 590, 591 (N.Y. App. Div. 1st Dep't 1990) ("the expense arising from the defense of a lawsuit is an insufficient injury to sustain" an abuse of process claim).

[7] See also, e.g., AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 724 (2d Cir. 2010) ("Sound judicial discretion ordinarily requires that the second court decline consideration of the action in deference to the proceedings pending before the first court." (internal quotation and citation omitted)).

[8] See also JSJ Limited Partnership v. Mehrban, 205 Cal. App. 4th 1512, 1523 (2012) ("[T]he mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action.").

### C. Microsoft's Claim For Declaratory Relief Fails.

First, in the Motion, Acacia explained that Microsoft's claim for a declaratory judgment that Acacia cannot sue for damages that pre-date September 30, 2013 was mooted by the Subsidiaries' stipulations and judicial admissions that they seek no such relief. (Mot. at 16-19 (citing cases).)[9] Acacia also explained that it was not a proper defendant for such a declaratory judgment claim because it does not own the patents. (Mot. at 17-18.) Microsoft appears to concede that this declaratory relief claim fails; Microsoft's opposition does not argue for a declaratory judgment that Acacia may not seek damages incurred prior to September 30, 2013.

Second, in the Motion, Acacia explained that Microsoft's claim for a declaratory judgment that Acacia must indemnify it was not ripe because the Contract does not include a duty to defend. (Mot. at 18-19.) Microsoft apparently concedes that this declaratory relief claim also fails; it offers no argument in support of this claim.

Microsoft now only argues for a declaration that Acacia was required to identify the patents it believed Microsoft infringed. This claim fails based upon the Contract's language. (See Section II.A.2., supra.) More importantly for this declaratory relief claim, any possible obligation expired when the Contract expired on September 30, 2013. (Contract, Art. A1, § A1.8.) Since this claim cannot guide future conduct, it fails to address a current controversy. See, e.g., Ippolito v. Meisel, 958 F. Supp. 155, 165 (E.D.N.Y. 1997) ("Courts are not obligated to entertain actions for declaratory judgment not seeking prospective relief but merely declaring past wrongs.").

### D. Microsoft Fails to Adequately Allege Alter Ego Or Agency.

Microsoft's opposition only points to an allegation that "[n]o plaintiff in the ARC Actions has an independent manager, but rather [each] is governed solely by ARG LLC." (Opp. at 19.) Even assuming its truth, this allegation is insufficient to support the first alter ego

---

[9] Tequila Cuervo La Rohena, S.A. de C.V. v. Jim Beam Brands Co., 10-civ-0203, 2011 U.S. Dist. LEXIS 12290, *4-*5 (S.D.N.Y. Feb. 8, 2011).

requirement, i.e., that Acacia has ignored corporate separateness. (Mot. at 23-24 (citing cases dismissing alter ego on similar allegations).)[10] Microsoft also has failed to allege facts in support of the second alter ego requirement, i.e., fraud or injustice. While Microsoft cites Edwards Co. v. Monogram Industries, Inc., 700 F.2d 994 (5th Cir. 1984) for the proposition that it need not plead fraud or injustice, the Edwards Court actually held on rehearing en banc: "Contrary to the panel, we agree with the district court that in order to pierce the corporate veil . . . in Texas, a showing of fraud or injustice is required and that no such showing was made here."[11]

Citing a concurring (rather than the majority) opinion in Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111 (2d Cir. 2010), Microsoft argues that Acacia is liable because the Subsidiaries are Acacia's agents. Even assuming New York law applies (Mot. at 24 n. 18 (addressing choice of law)), Kiobel explained that "[o]rdinarily, subsidiary corporations are not deemed to be the agents of their parent corporations." Id. at 195-96. The plaintiff must allege well-pled facts establishing there was an "agreement" between the parent and the subsidiary creating "an agency relationship." Id. Merely pleading that the parent "controlled" "through ownership" and "common" directors or "approved certain conduct" is not enough. Id. Here, Microsoft does not allege any well-pled facts suggesting that Acacia granted authority to any subsidiary to act on its behalf. Instead, Microsoft just makes a conclusory allegation that the subsidiaries are "controlled" by Acacia through common ownership. Under Kiobel, such

---

[10] Although Microsoft cites Tryco, there the plaintiff alleged that the parent company "transferred [the subsidiaries'] assets" to another corporation for the "fraudulent[]" purpose of avoiding a judgment against the subsidiary. Tryco Enters. V. Robinson, 390 S.W.3d 497, 510-12 (Tex. App. 2012).

[11] 730 F.2d 977, 979 (5th Cir. 1984) (en banc). Although Microsoft repeats its allegation that Acacia is using the corporate fiction to "evad[e] an existing legal obligation[]", Microsoft does not identify what supposed "existing legal obligation" Acacia is avoiding.

conclusory allegations are not sufficient.[12]

### E.    Microsoft's Claims Are Compulsory Counterclaims.

Microsoft argues its claims "directly arise" from the Contract.  But that is a red herring.

As explained in the Motion, binding Second Circuit precedent holds that the Subsidiary

Actions do not "directly arise" from the Contract and therefore are not controlled by the

Contract's forum selection clause.  (Mot. at 19-21.)  Microsoft does not dispute this point.

Also as explained in the Motion, Microsoft's claims are compulsory counterclaims in the

Subsidiary Actions that must be brought in those actions.  (Mot. at 21-23 (citing cases).)

Indeed, Microsoft does not contest that its claims in this litigation "arise out of the transaction or

occurrence that is the subject matter of" the Subsidiary Actions.  Fed. R. Civ. P. 13(a).  Since the

basis for this suit is that the Subsidiary Actions have harmed Microsoft, Microsoft's claims in

this litigation are compulsory counterclaims in the Subsidiary Actions under Rule 13(a).

Citing Jomico[13] and AGCS[14], Microsoft argues that if it "later decides to assert contract-

based counterclaims" in the Subsidiary Actions, venue would remain proper in this Court.  (Opp.

Br. at 6.)  This argument, however, is a non sequitur.  Rule 13(a) is not a venue statute.[15]  Rather,

Rule 13(a) requires that all claims must be raised in a single lawsuit.  This mandatory rule

advances judicial economy and res judicata.  Int'l Controls & Measurements Corp. v. Honeywell

Int'l, Inc., No. 12-cv-1766, 2013 U.S. Dist. LEXIS 127960, *16-17 (N.D.N.Y Sept. 9, 2013)

---

[12] Even if Microsoft adequately pleaded agency liability or alter ego liability, that still would not save Microsoft's Complaint because Microsoft's substantive contract and abuse of process claims fail.  (See Section II.B., supra.)

[13] Jomico, LLC v. Traxys N. Am., LLC, No. CIV-09-342, 2010 U.S. Dist. LEXIS 64668, at *15–16 (E.D. Okla. June 29, 2010).

[14] AGCS Marine Ins. Co. v. Associated Gas & Oil Co., 775 F. Supp. 2d 640, 646 (S.D.N.Y. 2011).

[15] Elevating form over substance, Microsoft incorrectly asserts that this argument must be raised through Rule 12(b)(3) instead of Rule 12(b)(6).  However, Rule 13(a) is not a venue statute.  Indeed, Microsoft does not cite a single case holding that compulsory counterclaim arguments must be raised through a 12(b)(3) motion, let alone a decision refusing to consider such an argument on this basis.

("[A] court will generally either stay ... or dismiss ... once it learns that the action . . . involves a claim that is . . . a compulsory counterclaim in another pending federal action....") (citations omitted).

Finally, Microsoft resorts to incorrect procedural quibbles.  Microsoft contends that "any counterclaims in the ARC Actions need not be asserted <u>until</u> such <u>time</u> as Microsoft is obligated to answer." (Opp. at 5 (emphasis added).)  But Acacia is not arguing <u>when</u> Microsoft must raise its counterclaims, but rather <u>where</u> it must raise them.  (Mot. at 22.)  As compulsory counterclaims, Microsoft's claims must be brought in the Subsidiary Actions.  <u>See Mopex, Inc.</u> <u>v. AMEX, LLC</u>, 2002 U.S. Dist. LEXIS 3532, at *18, 21-23 (S.D.N.Y. Mar. 5, 2002).

Microsoft's only two cited cases are inapposite for this very reason - they relate to when counterclaims must be asserted, not where.  In both cases, the plaintiffs had been defendants in a prior lawsuit that was resolved before they were required to assert their counterclaims.  <u>National</u> <u>Union Fire Ins. Co. v. Jett</u>, 118 F.R.D. 336 (S.D.N.Y. 1988); <u>Bluegrass Hosiery, Inc. v.</u> <u>Speizman Indus., Inc.</u>, 214 F.3d 770 (6th Cir. 2000).  The plaintiffs (formerly defendants) later decided to raise them as claims in other lawsuits.  The courts in these later lawsuits ruled that the plaintiffs had not run out of time to raise their claims because the previous lawsuits had never reached the stage where counterclaims would be waived unless raised.  <u>National Union</u>, 118 F.R.D. at 337; <u>Bluegrass Hosiery</u>, 214 F.3d at 772.  Those cases did not involve still-pending lawsuits in other jurisdictions.

## III.  CONCLUSION

For the foregoing reasons, Acacia respectfully requests that the Court dismiss Microsoft's Complaint with prejudice.[16]

---

[16] Microsoft has not even tried to meet its burden of explaining what additional facts it could allege to fix the defects in its Complaint.  Indeed, no amendment could change the unambiguous Contract terms.  <u>See</u>, <u>e.g.</u>, <u>Porat v. Lincoln</u> <u>Towers Community Assoc.</u>, 464 F.3d 274, 276 (2d Cir. 2006) (denying leave to amend "given that plaintiff's counsel did not advise the district court how the complaint's defects would be cured").

Dated:  February 18, 2014

STRADLING, YOCCA, CARLSON, & RAUTH, P.C.          HERRICK, FEINSTEIN LLP

s/ Marc J. Schneider                                              s/ Scott E. Mollen
Marc J. Schneider                                               Scott E. Mollen
Travis P. Brennan (admitted *pro hac vice*)           Steven D. Feldman
Bradley E. Marrett (admitted *pro hac vice*)          2 Park Avenue
660 Newport Center Drive, Suite 1600               New York, New York 10016
Newport Beach, CA  92660                               Tel:  (212) 592-1400
Telephone:  (949) 725-4000                             Fax:  (212) 592-1500
Facsimile:  (949) 725-4100                              smollen@herrick.com
mschneider@sycr.com                                   sfeldman@herrick.com
tbrennan@sycr.com
bmarrett@sycr.com                                      Attorneys for Defendant
                                                             Acacia Research Corporation
Attorneys for Defendant
Acacia Research Corporation

## CERTIFICATE OF SERVICE

I certify that on February 18, 2014, the foregoing document(s):

**ACACIA RESEARCH CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

was served on all parties or their counsel of record through the CM/ECF system.


s/ Marc J. Schneider
Marc J. Schneider