IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIDEO STREAMING SOLUTIONS LLC, ) | |
| ) | |
| Plaintiff, ) | No. 13 C 7031 |
| ) | |
| v. ) | Honorable Rebecca R. Pallmeyer |
| ) | |
| MICROSOFT CORP. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Video Streaming Solutions, LLC, holder of patents in certain video-streaming technology, has charged Defendant Microsoft Corporation with infringing four of Plaintiff's patents. The alleged infringement may have gone on for some time, but until September 30, 2013, Microsoft could act with impunity: in September 2010, Microsoft entered into a license agreement with Plaintiff's parent company, Acacia Research Corporation, that immunized Microsoft from infringement claims on any patent owned by Acacia and its subsidiaries in exchange for $22.5 million. That agreement lapsed on September 30, 2013, and Plaintiff filed this suit the next day. Microsoft has moved to dismiss for failure to join a necessary party (i.e., Acacia) pursuant to Rule 12(b)(7). In the alternative, Microsoft asks the court to transfer this action to the Southern District of New York (where Microsoft has filed a breach of contract suit against Acacia), based on the license agreement's forum-selection clause. For the reasons explained below, Microsoft's motion [22] is denied.

## FACTUAL BACKGROUND

Plaintiff VSS is a wholly-owned, operating subsidiary of Acacia Research Group LLC ("ARG"). ARG, in turn, is wholly owned by Acacia Research Corporation ("Acacia"), a Texas-based LCC, which operates as a non-practicing patent-assertion entity. (Pl.'s Resp. [40] at 1-2.) In a multi-document transaction on September 30, 2010, Microsoft paid Acacia $22.5 million for

a license to use Acacia's intellectual property.  Under the language of the parties' agreement (referred to here as the "Contract"), Microsoft was free to use any patent that was owned or controlled by Acacia.  Specifically, the Contract permanently immunizes Microsoft against any claim of infringement of any patent owned or controlled by Acacia or its subsidiaries (except for certain patents not relevant here) as of September 30, 2010 ("existing patents"), and immunizes Microsoft against any claim of infringement arising prior to October 1, 2013 regarding any patent acquired by Acacia or its subsidiaries after September 30, 2010 ("later-acquired patents").  (*See* Contract, Ex. 1 to Def.'s S.D.N.Y. Compl., Ex. A to Robbins Decl. [31], ¶¶ 1.3, 1.4, A2.1, A2.4, A3.1, A3.6.)

In addition, the Contract expressly states that it "may be pleaded as a full and complete defense to, and may be used as a basis of an injunction against" any patent infringement suit against Microsoft based on the covered patents.  (Contract ¶ A2.8.)  The parties agreed that the Contract is to be governed and construed according to New York law.  (*Id.* ¶ 4.10.)  The Contract also provides that in "all civil actions or other legal or equitable proceedings directly arising between the parties or any of their Affiliates . . . the Parties consent to exclusive jurisdiction and venue in the United States District Court for the Southern District of New York."[1] (*Id.*)

The term of the Contract was three years, starting on September 30, 2010 and concluding on September 30, 2013; however, Microsoft had the option of extending the agreement for two additional one-year terms for a fee of $15 million per year.  (*Id.* ¶ A1.8.) Defendant did not exercise this option, and the Contract expired on September 30, 2013.  The next day, VSS filed this suit against Microsoft, alleging infringement of four of its patents.[2] Each of the patents-in-suit is a "later-acquired patent," meaning that VSS acquired it between

---

[1] Or, if jurisdiction is not proper in federal court, New York state court.  (Contract ¶ 4.10.)

[2] U.S. Patent Nos. 6,629,318; 6,870,886; 6,806,909; and 6,175,595.

September 30, 2010 and September 30, 2013. (Pl.'s Sur-Reply [49] at 6.) As a result, the Contract immunizes Defendant from infringement claims (and Plaintiff also covenanted not to sue) based on conduct during the life of the Contract.

On October 1, 2013, VSS and other Acacia affiliates filed seven lawsuits against Microsoft in three different districts, all claiming infringement of later-acquired patents.[3] The original complaint in this case was ambiguous regarding the timing of the alleged infringing behavior, as it alleged that "Microsoft has committed, and continues to commit, acts of infringement . . . ." (Compl. [1] at ¶ 6.) VSS has since amended its complaint twice; consistent with representations that counsel made promptly in open court, VSS now explicitly limits its claims to infringement after the Contract expired, seeking damages for "Defendant's past, present, and future infringing activities since October 1, 2013." (Sec. Am. Compl. [38] at 17.) In response, Defendant has filed substantially similar motions to dismiss or transfer in each of the seven cases, including this one [22]. Two of these cases were dismissed voluntarily without prejudice,[4] but no other court has yet ruled on the pending motions to dismiss.

Microsoft has also filed a related suit against Acacia in the Southern District of New York. (S.D.N.Y. Compl., *Microsoft Corp. v. Acacia Research Corp.*, No. 13 C 8275-PAC (S.D.N.Y. Nov. 20, 2013), Ex. A to Robbins Decl.) In that case, Microsoft raises breach of contract and abuse of process claims based on the seven infringement suits that Acacia's affiliates have filed across the country. Earlier this year, Acacia moved to dismiss that suit

---

[3] *Cellular Communications Equipment v. Microsoft Corp.*, No. 6:13-cv-00738-LED (E.D. Tex.); *Computer Software Protection LLC v. Microsoft Corp.*, No. 1:13-cv-01638-SLR (D. Del.); *Data Engine Technologies LLC v. Microsoft Corp.*, No. 6:13-cv-00735-KNM (E.D. Tex.); *Innovative Displays LLC v. Microsoft Corp.*, No. 2:13-cv-00783-JRG (E.D. Tex.); *Intercarrier Communications LLC v. Microsoft Corp., Skype Inc., & GroupMe Inc.*, No. 1:13-cv-01639-GMS (D. Del.); *Optimum Content Protection LLC v. Microsoft Corp.*, No. 6:13-cv-00741-KNM (E.D. Tex.).

[4] *Computer Software Protection LLC v. Microsoft Corp.*, No. 1:13-cv-01638-SLR (D. Del.); *Data Engine Technologies LLC v. Microsoft Corp.*, No. 6:13-cv-00735-KNM (E.D. Tex.).

pursuant to Rule 12(b)(6), but that motion was denied on April 28, 2014 because, the court concluded that Microsoft's allegations were sufficient, taken as true, to state a claim of breach of contract. (Summary Order, *Microsoft Corp. v. Acacia Research Corp.*, No. 13 C 8275-PAC, at 2 (S.D.N.Y. April 25, 2014), Ex. A. to Def.'s Supp. to Mot. to Dismiss [70].)

## **DISCUSSION**

Microsoft has moved to dismiss for failure to join Acacia, which Microsoft claims is a necessary party to this litigation. (Def.'s Mem. at 6-7.) Alternatively, Microsoft seeks a transfer to the Southern District of New York. (*Id.* at 7-12.) Both of these arguments rely, at least in part, on Defendant's belief that VSS's claims (as well as those brought by other Acacia affiliates across the country) are governed by the 2010 Contract between Acacia and Microsoft, which (1) granted Microsoft immunity from any infringement claims based on conduct during the pendency of the parties' agreement[5]; and (2) limited venue for any claims "arising under . . . the [Contract]" to the Southern District of New York. (Contract ¶ 4.10.) The parties agree that the Contract expressly binds all Acacia affiliates, including VSS. (*Id.*) VSS argues, however, that the Contract is irrelevant here, because its second amended complaint seeks only damages for infringement *after* the expiration of the Contract on September 30, 2013. (Sec. Am. Compl. ¶¶ 24, 42, 60, 78.)

**I.    Whether This Suit Arises Under the Contract**

Microsoft presents three separate arguments to support its contention that, despite the language of VSS's second amended complaint, limiting its claims for damages to infringement *after* the conclusion of the Contract, this suit "aris[es] . . . under the [Contract]." None of these arguments satisfies the court that this dispute is governed by the Contract.

---

[5] As discussed above, the agreement permanently immunized Microsoft with regard to Acacia's existing patent portfolio as of September 30, 2010 and immunized Defendant for the duration of the agreement with regards to patents that, like those here, were acquired during the life of the contract. (Contract ¶ A2.1.)

4

First, Defendant contends that Plaintiff improperly sought damages barred by the Contract's terms. Microsoft acknowledges the second amended complaint explicitly limits the claim for damages to infringement starting on October 1, 2013, but argues that clarification does not undo "the breach that has already occurred as a result of the initial complaint filed here." (Def.'s Reply at 3.) The original complaint, Microsoft urges, "unequivocally sought recovery in the form of damages for infringement occurring before October 1" by alleging that "Microsoft has committed, and continues to commit, acts of infringement . . . ." (*Id.* (citing Compl. at ¶ 6.) In doing so, Microsoft argues, VSS and Acacia breached the Contract's covenant not to sue, and, therefore, it arises under the Contract and is subject to its forum-selection clause.

Microsoft believes it has caught Plaintiff in a breach, but the court does not agree. Although the original complaint's use of both the past and present tense to describe the alleged infringement may have generated some ambiguity regarding the temporal scope of VSS's infringement claims, that complaint did not, as Defendant suggests, "unequivocally" seek damages for alleged infringement prior to October 1, 2013. Given the context and timing, one might reasonably interpret the allegation that Microsoft "has committed" infringement as claiming only damages arising on October 1, 2013 and after. Furthermore, the language of the original complaint ("has committed, and continues to commit, acts of infringement") is technically accurate even if VSS only sought damages for infringement starting on October 1, 2013, the date VSS filed its complaint. In any event, in open court, and in its second amended complaint, Plaintiff provides a clear answer to the question of whether VSS seeks damages for infringement that occurred during the Contract: it does not.

Second, Microsoft contends that VSS's suit constitutes a breach on another ground: namely, that Plaintiff failed to live up to its obligation to annually identify any patents that it believed Defendant was infringing upon and give Defendant notice of that belief. (Def.'s Reply at 3 n.2.) The failure to do so, as Defendant would have it, amounts to an admission that Microsoft was not infringing as alleged here. For support, Defendant points only to its complaint

in the Southern District of New York, which, in turn, does not cite to the Contract or any other authority.[6] Further, the court is unable to identify any such obligation in the terms of the Contract.[7] More importantly, even if true, Defendant's assertions on this score are irrelevant to the issue at hand. Any supposed admission that Microsoft is not infringing has no bearing on whether or not the suit should be transferred or dismissed for failure to join a necessary party.

Finally, Defendant argues that VSS "improperly invited this [c]ourt to resolve [issues of contractual interpretation]," issues which, based on the Contract's forum-selection clause, "must be litigated in the Southern District of New York." (Def.'s Resp. to Pl.'s Sur-Reply at 2 (citing Pl.'s Sur-Reply at 5-7).) This argument is meritless. Although the portion of Plaintiff's sur-reply to which Microsoft refers does involve issues of contractual interpretation, VSS is simply responding to Microsoft's own contract-based arguments. It cannot be the case that, by raising its own contractual issues, Microsoft can render VSS's suit, which otherwise falls outside the scope of the Contract, one that arises under it.

Having determined that this suit does not arise under the Contract, the court turns to Defendant's substantive arguments.

---

[6] Microsoft cites to Paragraph 37 of its complaint, which does not discuss a notice requirement. The court notes, however, that Paragraph 32 of that complaint may be relevant to this issue, although it does not cite to any contractual provision: "Furthermore, under the Contract . . . [Acacia] was required to categorize for Microsoft in a written update which patents [Acacia] believed Microsoft was infringing. In the only written update ever provided, in December 2012 [Acacia] represented that Microsoft was not infringing any patents that [Acacia] or its affiliates acquired after September 30, 2010." (S.D.N.Y. Compl. ¶ 32.) Plaintiff noted the absence of authority for Defendant's argument in its sur-reply (Pl.'s Sur-Reply at 5-6), yet Microsoft failed to provide any additional citation in its subsequent sur-response [55].

[7] The nearest approximation, referenced by Plaintiff, simply required VSS to annually identify for Microsoft any new patents that VSS had acquired during that year. (Contract at ¶ A6.7.) This provision did not, however, require notice regarding potential infringement. Plaintiff asserts that it complied with the identification requirement. (Pl.'s Sur-Reply at 5-6.)

## II. Forum-Selection Clause

Microsoft asks the court to transfer this case to the Southern District of New York based on the Contract's forum-selection clause, pursuant to 28 U.S.C. §§ 1404(a), 1406, and Rule 12(b)(3). Forum-selection clauses are presumptively valid. *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 761 (7th Cir. 2006). Courts will enforce forum selection clauses even after the expiration of a contract, but only where a party's claims involve rights arising out of the contract. *See Weingrad v. Telepathy, Inc.*, No. 05 C 2024 (MBM), 2005 WL 2990645, *3 (S.D.N.Y. Nov. 3, 2005) (citing cases). Here, the Contract immunized Defendant from any infringement claims throughout the duration of the agreement; but VSS seeks damages for infringement that occurred *after* the contract's expiration. The court agrees with VSS that the forum-selection clause of the Contract is not applicable to its claims here.

## III. ARC as Necessary Party

Microsoft urges the court to dismiss this case pursuant to Rule 12(b)(7) because, it argues, Acacia is an indispensable party and absent from the suit. Specifically, Microsoft contends that Acacia is indispensable because (1) it is the entity that allegedly breached the contract with Microsoft by "seeking recovery for alleged infringement that occurred during the term of the contract" through its affiliate VSS, and (2) "without [Acacia], the [c]ourt cannot accord complete relief and Microsoft is subject to a substantial risk of incurring inconsistent obligations."[8] (*Id.* at 6-7.) As the Contract (and its forum-selection clause) does not apply here

---

[8] Defendant also makes a cursory reference to the idea that "[Acacia] is the real party in interest" in this and every other suit brought by its affiliates on October 1, 2013 because Acacia was party to the contract with Microsoft. (Def.'s Mem. at 5.) Because it is uncontested that VSS owns the patents in suit, the court is satisfied that VSS is the proper Plaintiff. Microsoft further makes a passing suggestion that corporate veil piercing is warranted here because Acacia has used its affiliates, including VSS, "as a means of evading its legal obligations" under the Contract. (Def.'s Reply at 7.) Microsoft has not explained how Acacia so uses VSS, nor does Microsoft articulate how such an allegation, if true, would necessitate Acacia's joinder in this action.

(discussed above), Defendant's first argument must fail; but Microsoft's second argument requires more attention.

A motion under Rule 12(b)(7) seeks dismissal based on the failure to join a necessary party as required by Rule 19. The purpose of Rule 19 is to "permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Askew v. Sheriff of Cook Cnty.*, 568 F.3d 632, 634 (7th Cir. 2009) (quoting *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990)). To evaluate a Rule 12(b)(7) motion, the court must engage in a two-step inquiry: (1) is the non-party necessary?; (2) only if the court determines that the non-party should be included in the action but cannot be (because of a jurisdictional issue, for instance) must it go on to decide if the litigation can proceed in its absence. *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999). Here, the first issue is dispositive.

> Under Rule 19(a) a party is necessary if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1). If an absent entity satisfies these elements, "the court must order that the person be made a party." FED. R. CIV. P. 19(a)(2).

Defendant does not argue that, without Acacia, the court will be unable to accord complete relief among the existing parties. Rather, pursuant to Rule 19(a)(1)(B), Microsoft argues that "[i]f the seven lawsuits that [Acacia] caused to be filed remain separate, and [Acacia] remains absent from them, Microsoft faces a substantial risk that the Contract will be interpreted inconsistently from case to case . . . a judgment rendered without [Acacia]'s presence will prejudice Microsoft." (Def.'s Mem. at 6-7.) As discussed above, however, the

8

court concludes that the Contract is not actually implicated by VSS's second amended complaint. There is, thus, little risk that the Contract will be interpreted inconsistently. Further, the possibility that one court might interpret a contract differently than another court presents a risk of inconsistent *adjudications* rather than inconsistent *obligations*, and the former does not implicate Rule 19. "Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." *Grubb & Ellis Co. v. Huntington Hoffman, LLC*, No. 10 C 5068, 2010 WL 4962846, at *3 (N.D. Ill. Dec. 1, 2010) (quoting *Delgado v. Plaza Las Americas*, 139 F.3d 1, 3 (1st Cir. 1998)). The concept of inconsistent adjudications or results, by contrast, contemplates "a defendant [who] successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum." *Delgado*, 139 F.3d at 3 (citing *Nat'l Union Fire Ins. Co. v. Mass. Mun. Wholesale Elec. Co.*, 117 F.R.D. 321, 322 (D. Mass. 1987)). Courts around the country have previously concluded, as this court does, that a threat of multiple litigations does not necessarily run afoul of Rule 19(a). *Buquer v. City of Indianapolis*, No. 11 C 708, 2012 WL 76141, at *4 (S.D. Ind. Jan. 9, 2012) (citing cases). That no such problem exists here is made evident by imagining the possible outcomes of the related infringement suits here. For instance, the Eastern District of Texas may determine that the Contract bars recovery. The District of Delaware may transfer the cases before it to the Southern District of New York based on the forum-selection clause. While these results would certainly be inconsistent, they do not result in the type of inconsistent and mutually exclusive obligations that concern Rule 19.[9]

Defendant also failed to establish the other element required of a necessary party under Rule 19(a)(1)(B): Acacia has not claimed an interest in the litigation. As VSS put it, "[Acacia] is

---

[9] The court notes that there is also no risk of inconsistent determinations as to infringement, as the eighteen patents involved in the seven suits here are distinct. (Def.'s Mem. at 5.)

aware of this action. [Acacia] has chosen not to join it. This should end the inquiry." (Pl.'s Sur-Reply at 9.)

As Acacia does not claim an interest in the litigation and its absence will not result in inconsistent obligations for Microsoft, Acacia is not a necessary party under Rule 19, and this action may proceed in its absence.

## **CONCLUSION**

For the foregoing reasons, Microsoft's motion to dismiss or transfer [22] is denied.

ENTER:

Dated: May 27, 2014

*[signature: Rebecca R. Pallmeyer]*

United States District Judge